Case number 12-1228, National Oilseed Processors Association et al petitioners v. Occupational Safety and Health Administration et al. Ms. McLean for the petitioners, Ms. Betz for the respondents. All right, Mr. McLean, good morning. Good morning. May it please the Court. My name is Donald McLean. I represent the petitioners and the intervener for petitioners in this challenge of OSHA rulemaking. Two OSHA standards are at issue in this case, the Grain Handling Standard and the Hazard Communication Standard, revised in 2012. For the past 27 years, since 1987, OSHA has regulated the grain handling industry pursuant to the Grain Handling Standard. During this entire period of time, OSHA has used the Grain Handling Standard to address possible fire and explosion hazards from grain dust. During this period of time, OSHA, to our knowledge, has never applied the Hazard Communication Standard in an enforcement action against the grain industry for combustible dust. What are we to make of that? Can't that be explained as a prosecutorial discretion or a resource matter? I mean, that isn't a big point in your favor, right? Right. In the context of this particular industry, which has been regulated since 1987. Are you making an estoppel argument because they've never done it before, they can't do it now, that there's some sort of tacit agreement that the only way that they'll regulate you is through the Grain Handling Standard? We think it's a critical factor, Your Honor. Does the Grain Handling Standard deal with disclosure of hazardous materials? Does it have a different function than what we're talking about with the hazardous, with the HCA? It certainly deals with disclosure to employees that are in the grain handling industry, and our belief is that all folks, all employees in the grain handling industry are trained pursuant to the Grain Handling Standard. There's nothing in terms of disclosure that's added by the hazard communication standard that isn't already covered in the Grain Handling Standard? There's nothing? Just complete overlap? Yes or no? Part of the complaint is that there's uncertainty with respect to that. One difference is it covers other actors in the grain industry. I mean, the HAZCOM standard also speaks to the importers and so forth. Isn't that true? HAZCOM does speak to importers. That's exactly right. Right. So, I mean, it covers different people. It may cover some of the same people as the Grain Handler Standard, Handling Standard, but it also covers others. And part of our complaint here is that the Grain Handling Standard is very potentially undermined by this final rule. It's undermined in a number of respects. It's undermined because, for example, the Grain Handling Standard has very specific requirements with respect to employee training. It trains with respect to explosion hazards, with respect to ignition sources, prevention, housekeeping, preventative maintenance. The HAZCOM standard says go train on combustible dust, and combustible dust is undefined. The grain handling industry doesn't know what that means when it's put next to the very specific employee training requirements in the Grain Handling Standard. That's one example. The Grain Handling Standard focuses on one-eighth inch thickness of dust as an action level and works to housekeeping, works to prevention to that one-eighth inch level. There's no one-eighth inch action level in the HAZCOM final rule as amended. So the grain industry is putting one next to the other and trying to figure out, okay, is the one-eighth preempted? What does this all mean? There are a number of different standards that OSHA points to in its guidance with respect to compliance with the undefined combustible dust provisions of the final HAZCOM rule. But just with respect to one element, particle size, they vary. One voluntary standard says 500 microns. Well, isn't OSHA saying pick one? Just pick one. Pick one. Pick a card, any card. You're fine. Well, that's by way of interpretation and not by way of regulation. So if we pick one and it's the wrong one, we could be cited for it. In addition, how do we – I didn't follow you there. How could that be? If OSHA tells you you can pick one of these voluntary standards and you pick it, you're saying they could then come back and cite you for a violation? That seems highly unlikely. Do you know of any instance where OSHA has done that? Well, no, because this is brand new to – Why am I saying this? This is a general matter. But that's what you say you're in fear of. One of the things that we're in fear of is undermining the grain handling standard because of all of these other standards that can be picked from in comparison to the one-eighth inch action level of dust. And remember, these standards deal with one of at least 13 different characteristics that make up combustible dust. The advance notice of proposed rulemaking that OSHA put out in 2009, which is really how combustible dust should be regulated. It shouldn't be regulated through the back door by way of the CASCON standard. But the advance notice of proposed rulemaking for combustible dust listed 13 different criteria that comprise and define combustible dust. These standards focus on one, and it's size. And the standards are all over the place, including OSHA's NEP standard, which says, you know, regardless of size or shape. So they don't have a size criteria. So very concerned that we'll be undermining the grain handling standard by asking the industry to focus on different standards when it's been living under the grain handling standard for the past 27 years. Well, let me ask you, your first argument is you didn't receive notice. Yes. All right. So the notice of proposed rulemaking is quite explicit, isn't it? It's not explicit as to grain, grain dust, grain handling industry. It mentions it at several points, and it also invites comments on combustible dust. And it's not as though your industry wasn't referred to, mentioned, et cetera, much less the sort of global approach that OSHA is trying to implement in various stages. I mean, it's not as though they had said, you know, we're not going to touch grain, and then all of a sudden they issue a final rule talking about grain. Would you agree with that? The proposed rule is the same as the 1994 HAZCOM standard as it relates to grain. There's nothing new in the proposed rule, and it doesn't deal, in our view, the regulation itself doesn't deal with anything other than inhalation risks, and that's subpart Z of the 94 rule, inhalation risks from wheat, oat, and barley. The 94 rule is the same as the proposed rule. It's not until we get to the final rule that OSHA says in its preamble, oh, by the way, all this applies to combustible dust. Combine that with the fact that OSHA has recently already tried to cite, under the new HAZCOM standard, which isn't even in effect yet. It was an improper citation, but they tried to cite it against MFA Inc. It puts the industry right in the crosshairs. So this is a very— Didn't they back down on that? They deleted it. They knew that was a mistake that somebody acted. Well, they deleted it. It's still in the record. It's in the joint appendix. You can see the 1910 F6, I think it is, citation, which is not part of the 94 standard. It's part of the 2012 amended standard. So your position is that OSHA had no authority other than to proceed in two separate rulemakings, one, the final rule that was adopted here, and then two, its definition of combustible dust in a separate rulemaking. What we're saying, Your Honor, is that we should have had notice. Well, I just went through that with you. We should have had a seat at the table. Why didn't you? I mean, what did they have to do to alert you that they're proposing this approach in light of global efforts here? Well, I think for one thing, if the preamble language in the 2012 final rule had been in the proposed rule or in the advance notice of proposed rulemaking, I mean, that certainly would have triggered a lot of thought and a lot of concern about the potential undermining of the grain handling standard. Well, but my notes say that, for instance, at JA 598, in the notice of proposed rulemaking, the agency says, they ask the question as to new unclassified hazards, will this be sufficient interim coverage for hazards such as combustible dust? You acknowledge that there are grains that are combustible, grain dust that's combustible. So they're alerting you. But there was no reason in light of a 27-year enforcement history to believe that... New proposed rulemaking, new approach. They weren't bound always to follow the 1927 approach. We think this is like the Damler versus EPA case that Judges Henderson and Rogers were on in two ways. Did the court frame the issue in the Damler cases? Did the agency improperly amend its regulation without warning so that it would now jibe with the agency's preferred interpretation? We think that's exactly what happened in this case. And also, the court's holding in Damler... So that's your logical outgrowth argument, as I understand it. Is that right or no? I don't think necessarily... In other words, this language I just read you from the notice of proposed rulemaking, you say that wasn't adequate to alert members of your association that there was going to be what OSHA styled as this interim coverage of compatible dust. Right. And why not? Well, for a number of reasons. You'd always had this approach before, you say, to the agency. There is this grain dust standard out there. And until you amend that, you can't do anything else? As late as April of 2014, OSHA issued a press release with respect to a grain dust incident that had occurred. And OSHA said the grain handling industry is governed by the grain handling standard, period. When OSHA put forth its NEP program under citations, you look and it says, okay, here are citations. But then with respect to the grain handling industry, the citations are to be looked at under the grain handling standard. So I think there are a lot of elements, and we've briefed those factual elements that we think we've briefed. So you say that the situation now where the agency has issued this guidance basically saying you can pick any standard and apply, and if you need guidance, come see us, that because that itself did not go through notice and comment rulemaking, that the agency's rule must be set aside? That's a portion of the argument, but a much more significant portion of the argument, Your Honor, is that the guidance is very confusing, especially when it's put alongside the grain handling standard, especially when you're asking the regulated industry to choose. Yeah, but I thought, excuse me, the whole point was suppose you said, you know, my client is following the grain handling standard, OSHA, and that's the standard we pick. OSHA says fine. And that's the conversation we wanted to have with OSHA as part of the notice. And you can have it, says OSHA. They've invited you to have that conversation. That's the conversation we wanted to have as part of the notice and proposed rulemaking. I understand, but you didn't want to answer OSHA's question that it put forth in the notice of proposed rulemaking, because you said we have this standard, so we don't need to answer this question. Well, I'm not sure we don't need to answer it. We don't think it applies to us because we have this separate standard that deals with explosive dust in the grain handling industry, which as late as last month the head of the U.S. Chemical Safety Board said essentially is the gold standard when it comes to explosive dust and urged OSHA to, you know, to carry through with its combustible dust rulemaking. So when OSHA says follow that, how does that undermine the progress that has been made, according to your brief, under the grain standard? But it's unclear that that's where it's going to come out. Why? Have you asked the agency and they haven't given you a yes or no? Well, the citation to MFA, for example. Well, they pulled it back. As a result of settlement discussions, I assume it was deleted. I don't know why exactly it was pulled back. Well, you're assuming. We don't know either. So, I mean, that doesn't support your case. The actual citation that was left in that case for MFA was a grain handling standard violation. I mean, I'm not suggesting enforcement people are, you know, don't make errors. So they pulled it back. But we're here on your notice argument, as I understand it. Absolutely. Absolutely. All right. Then you say it's unconstitutionally vague. Yes, Your Honor. And the government says that argument isn't right. Well, we think that it is right. Well, how do you distinguish our precedent? Abbott and Sabre? Navigar and NRDC. Well, if the issue is vagueness in all applications, we think it is vague in all applications. And you can't, in our view, you can't say vague in all applications and use the grain handling standard as the law that you're looking at in terms of vagueness in all applications. You have to look at the PASCOM rule. Why not? I think they're different rules, for one thing. But, I mean, when the agency says you can comply with this by complying with a grain standard. It still goes back to my point of, in several respects, undermining the grain standard and having a seat at the table to talk to the agency about that. All right. We'll give you a couple of minutes. Okay. Thank you. Ms. Betz? Good morning. May it please the Court, I'm Louise Betz. I represent the Department of Labor. Your Honor, there's simply no basis for the Grain Association's claims that they were somehow misled into thinking that the hazard communication standard didn't apply to them just because the grain handling standard applies to them. Nor does the hazard communication standard undermine the grain handling standard in any way. As a preliminary matter, the two standards regulate different hazards. The hazard communication standard regulates the hazard of insufficient information. Specifically. Specifically, Your Honors, the hazard communication standard regulates insufficient information. It requires the provision of labels, safety data sheets, and information and training about workplace hazards. The grain handling standard regulates grain explosions in grain handling facilities, among other physical hazards. It doesn't contain any requirements for labeling for safety data sheets, and it contains less specific and less comprehensive training requirements from the hazard communication standard. They address different hazards. And OSHA has always taken the position, began publicly interpreting the hazard communication standard as covering combustible grain dust in 1986. OSHA's never taken the position that the hazard communication standard didn't cover combustible grain dust, including after the grain handling standard was promulgated. The grain handling standard was promulgated in 1987. In the preamble to the 1994 Notice of Proposed Rulemaking, revising the hazard communication standard at that time, OSHA explicitly stated that the hazard communication standard applies to grain handling facilities because while they present inhalation hazards, grain dust presents inhalation hazards, it also presents a combustible dust hazard. OSHA explicitly stated that in the Notice of Proposed Rulemaking in 1994. And again, in the preamble to this rulemaking, as Judge Rogers noted on page 3 of the preamble, OSHA explained that it would cover combustible dust explicitly in this rulemaking to continue covering it as it always has. The GHS, the Globally Harmonized System, revisions to the hazard communication standard were meant to harmonize the hazard communication standard with a globally harmonized system of labeling and classifying hazards to improve the quality of information about hazards. Again, this is an information transmittal standard to employers and employees exposed to those hazards in the workplace. Because of the way the Globally Harmonized System changed the hazard communication standard and the way that hazards were classified, OSHA had to treat combustible dust slightly differently in the text of the standard, although in practical effect, it was still covered by the same requirements it's been covered by since the standard was promulgated in 1983. In OSHA's 1986 interpretation, it made clear that combustible grain dust was a hazardous chemical and that employers needed to comply with the labeling, safety data sheet, and information and training requirements of the hazard communication standard. That coverage of combustible grain dust under the standard has not changed. OSHA has consistently reiterated that position over and over again and has never taken a contrary position. Even if there were some logical force to the petitioner's arguments that they thought they weren't covered by the hazard communication standard just because they're covered by the grain handling standard, the first paragraph of the grain handling standard explicitly states that all other provisions of Part 1910 apply to grain handling facilities and that would include the hazard communication standard. Also, with respect to their similar arguments that they were confused about OSHA's advance notice of proposed rulemaking on combustible dust, in the advance notice of proposed rulemaking, and this is in the joint appendix at page 807, OSHA explicitly stated that it was addressing hazard communication issues for combustible dust in a separate rulemaking. Those issues were resolved in the hazard communication standard rulemaking that's at issue today. And moreover, OSHA hasn't issued a rule on combustible dust yet, so the idea that a future rule would somehow preempt an existing rule, particularly when they cover different hazards, is simply illogical. I'd like to address the issues that Judge Griffith and Judge Rogers raised about OSHA's guidance on how the hazard communication standard's treatment of combustible dust affects employers, particularly grain employers, with combustible dust hazards. As Judge Griffith noted, OSHA's guidance essentially says pick a standard, any standard. There are a number of generally accepted consensus standards out there and other methods, including the method in the grain handling standard for determining whether grain dust presents a combustible dust hazard. OSHA said employers can use any of those. Judge Rogers then, in response to the petitioner's claims that they didn't feel they could really rely on that guidance, if OSHA tried to issue a citation essentially changing its interpretation and saying, hey, we told you you could rely on any of those standards, but now we're saying you can't and we're going to issue a citation, first of all, as Your Honors noted, that's extremely unlikely to happen. And second of all, if it did, that would be an as-applied challenge. There would certainly be a potential notice issue there if OSHA had told the regulated community they could rely on a definition and then tried to cite them when they relied on that definition, telling them that that was no longer good enough. Are you going to deal with the ripeness question? Yes, Your Honor. So getting past the notice issue, the petitioner's facial vagueness challenge isn't ripe. The petitioners are asking this court for an advisory opinion, speculating that their members won't be able to figure out what combustible dust means under the hazard communication standard. Even though the grain industry concedes that its members know what combustible dust is under the grain handling standard, and even though OSHA has said they can use that method for determining whether something's a combustible dust hazard under the hazard communication standard. So not only are the petitioners asking the court to speculate that its members are going to be confused, it's actually admitted that its members aren't confused about what combustible dust is. As the Supreme Court articulated in the National Park Hospitality Association's case, the purpose of the ripeness doctrine is twofold. First, to prevent the courts from entangling themselves in abstract disagreements about administrative policies, which is exactly what's happening here. OSHA has made a policy decision to use the term combustible dust without a technical definition, and instead to allow employers broad flexibility to rely on other accepted definitions out there. And the second policy reason behind the ripeness doctrine is to prevent agencies from judicial interference until the effects of an administrative decision have been felt in a concrete way. And this concern is particularly strong here, where in a concrete setting, it would be clear that the petitioner's members in fact know what combustible dust is and know that grain dust presents an explosion hazard. As the Third Circuit noted in the Associated Builders case, the propensity of grain elevators to explode has been well documented. OSHA simply isn't doing anything confusing or controversial here. It's merely extending the same coverage that has always existed under the hazard communication standard in a more explicit way because of the way that the Globally Harmonized System amendments to the standard changed the way combustible dust otherwise would have been treated, and to ensure that the standard continued to be as protective as it's always been with regard to combustible grain dust. You don't need to prevail on ripeness to prevail overall, do you? No, Your Honor. Although they don't satisfy the elements for facial vagueness, which is, again, the ripeness issue, that they'd have to show that the challenge language is vague in all applications and that they would suffer concrete hardship. So what's your strongest argument that it's not vague here? I don't want all your arguments. I just want your strongest argument. Sure. Well, I guess my strongest argument stems from the standard for vagueness in this court. So I'd like to read that standard and then explain how we're comfortably within the standard that this court's established. In the AJP construction case, which is an OSHA case, so it sets out the standard appropriate here, quote, if by reviewing the regulations and other public statements issued by the agency, a regulated party acting in good faith would be able to identify with ascertainable certainty the standards with which the agency expects parties to conform, the agency has fairly notified a petitioner of the agency's interpretation. First of all, even if all OSHA did was use the term combustible dust in the final rule, again having given notice that combustible dust would be covered in the proposal, the term combustible dust is not vague under this standard. There's broad general agreement about what it means. But if you're asking for our strongest argument, the standard articulated by this court makes clear that the court's also going to consider other public statements issued by the agency. It's the memo. It's the December memo, right? Is that your strongest argument? Yes, the December memorandum. But in combination with the history of notice that the agency's provided that combustible grain dust has always been covered, there's simply no need. Do you need the history if all you have is the December memo? No, Your Honor. The preamble to the final rule, which explains that combustible dust has a broadly accepted meaning and refers employers to OSHA's combustible and dust national emphasis program in addition to the National Fire Protection Association, the NFPA standards, and it thoroughly explains its reasons for not adopting a technical definition as part of this rulemaking. So the preamble to the final rule gives additional guidance. The term combustible dust isn't vague. It's got – there's broad general agreement on what the term means. And to the extent that there might be some technical disagreement on the margins about how to craft a technical definition of combustible dust, the 2013 memorandum certainly takes care of any uncertainty that could be caused by that technical disagreement at the margins. Essentially, as Your Honor noted – So why do you care about the right position? Your Honor, we're trying to make our strongest case. I mean, this case clearly isn't right. In a concrete setting, it would be obvious that the grain industry knows that combustible grain dust poses a combustible dust hazard. In a concrete case, OSHA would be able to point to facts making clear that combustible grain dust is a combustible dust and that the grain employer being cited in that case would know it. I think ripeness is one of our strongest arguments, but we don't need it. Even if the spatial challenge were ripe, it fails. This Court has made clear that reasonable breadth and flexibility are permissible in statutory – in regulatory text. And the Supreme Court noted in the Grainid case that mathematical certainty isn't required of regulatory language. That's essentially what the petitioners are suggesting is required here, that OSHA needed to craft a mathematically certain technical definition of combustible dust, but that's not what this Court or the Supreme Court requires. The term combustible dust amply satisfies the standard articulated by this Court, that a regulated party acting in good faith, viewing the regulatory text and the other statements by the agency, would understand the standards with which it's expected to conform. There doesn't actually seem to be really any dispute about that. The petitioners acknowledge that they know what combustible dust is under the grain handling standard. Their suggestion that the fact that the grain handling standard addresses the depth of combustible dust in the workplace isn't relevant here. It again points to the fact that the two standards regulate different issues. The grain handling standard is concerned with the amount of dust in the workplace. It has requirements for reducing accumulations of dust, requirements like housekeeping and ventilation systems, and prohibitions on ignition sources in dusty areas of the workplace. The hazard communication standard isn't concerned with the depth of dust in the workplace. The hazard communication standard is concerned with making sure that chemical manufacturers who create combustible grain dust hazards communicate those hazards on labels and safety data sheets to downstream users and provide training to employees so that they understand the hazards they're exposed to in the workplace. Your Honors, what OSHA's doing here is simply not confusing, and it's not controversial. OSHA's been clear that the hazard communication standard has always covered combustible grain dust. OSHA provided explicit notice in the notice of proposed rulemaking that combustible dust would be covered under this standard in the same way it's always been covered, that labeling and safety data sheets and information and training would be required for combustible grain dust. The petitioners know that grain dust is combustible, and they're not confused about what combustible dust means. And OSHA has issued guidance giving employers broad flexibility to use any accepted definition of the term, including the definition the petitioners admit understanding under the grain handling standard. If there are no further questions, the Department of Labor respectfully requests that the court deny the petition for review. All right. Thank you. Thank you. Does Mr. McLean have any time? Okay. Why don't you take two minutes? Thank you. A word very quickly about the – we've heard about the global harmonization standard, and let me just say this, that OSHA said that it did all of this with the HASCOM amendments to align the hazard communication standard with the globally harmonized system of classification and labeling of chemicals as established by the United Nations Subcommittee on Experts. Yet the U.N. Subcommittee on Experts has not defined combustible dust, has not finished its work on combustible dust, and does not know when it will. So I think that there's a little bit of an inconsistency here to say that what they did with respect to the HASCOM standard is to align it with something that hasn't even been completed. There was some discussion about the 2013 guidance document from OSHA. And, of course, the 2013 guidance document from OSHA postdates the promulgation of the HASCOM final rule. So, of course, that does not provide notice to the grain handling industry, regardless of what it says, in advance of promulgation of the final rule. So it provides clarity, does it, as to what you're expected to do, what you're required to do in OSHA's view? We think it doesn't, because we think that the inconsistencies in the voluntary standards that are set forth in that document So you're saying if you pick up and read the voluntary standards, take any of them, you wouldn't know what to do because they're possibly in conflict with the grain handling standards? Among themselves and with the grain handling standards. That's right. And take a look at the first paragraph of that December 2013 memo. It's almost indecipherable. It is very difficult to understand whether OSHA is talking about doing additional rulemaking to make this all clearer, or whether it's done. It's just very, very unclear. There was a reference to the grain handling industry knowing what combustible dust is. The grain handling industry is focused on fugitive dust, which is defined as combustible dust particles of a certain size. As I indicated, combustible dust size is one of 13 factors set forth by OSHA in its combustible dust advance notice of rulemaking, as to what combustible dust is comprised. So honestly, nobody knows yet what combustible dust is because OSHA hasn't told us, the U.N. subcommittee has not told us, and the combustible dust rulemaking hasn't told us. All right. Thank you.